***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Donovan with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing as: *Page 2 
 STIPULATIONS
1. The parties are properly before the Commission and the Commission has jurisdiction over the parties and the subject matter.
2. At all times relevant to these claims an employer-employee relationship existed between plaintiff and defendant-employer.
3. Defendant-employer is self-insured and Gallagher Bassett is the processing agent.
4. Plaintiff's average weekly wage was $1,204.21, entitling him to the maximum benefit for 2008 of $786.00 a week.
5. Plaintiff suffered some injury as a result of an accident while at work on 26 June 2008.
6. Defendant has paid no partial or total disability benefits to plaintiff in this claim.
 *********** ISSUES
1. Whether the 26 June 2008 injury by accident caused or contributed to the on-going conditions of plaintiff's back, neck, shoulders, arms and legs?
2. Whether plaintiff is entitled to payment for past and future medical treatment arising from injuries sustained in the 26 June 2008 injury by accident?
3. To what benefits, if any, is plaintiff entitled?
4. Whether defendant is entitled to a credit for salary continuation payments made to plaintiff while he was out of work?
5. Whether defendant is subject to sanctions pursuant to N.C. Gen. Stat. § 97-18(c) and Rule 601? *Page 3 
6. Whether plaintiff is entitled to a 10% penalty pursuant to N.C. Gen. Stat. § 97-18(g)?
7. Whether plaintiff is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1?
 *********** EXHIBITS
1. The parties stipulated the following documentary evidence:
 a. Stipulated Exhibit #1: I.C. Forms
 b. Stipulated Exhibit #2: Medical Records
2. In addition to the Stipulated Exhibits, the following Exhibits were admitted into evidence:
 a. Plaintiff's Exhibit #1: Data Sheet
 b. Plaintiff's Exhibit #2: Work Status Report
 c. Plaintiff's Exhibit #3: Medical Dept. Flow Sheet
 d. Plaintiff's Exhibit #4: Medical Records
 e. Plaintiff's Exhibit #5: Treating Physician Report
 f. Plaintiff's Exhibit #6: Patient Responses
 g. Plaintiff's Exhibit #7: Medical Records
 h. Plaintiff's Exhibit #8: Photos
 i. Plaintiff's Exhibit #9: Earnings Report
 j. Plaintiff's Exhibit #11: Absentee Listing
 k. Plaintiff's Exhibit #12: Earnings Report
 l. Plaintiff's Exhibit #13: Earnings Report and Benefits *Page 4 
 m. Plaintiff's Exhibit #14: Salary Continuation
 n. Plaintiff's Exhibit #15: Adjustments Form
 o. Defendant's Exhibit #1: Personnel and Medical File
 p. Defendant's Exhibit #2: Form 22 and Payroll Records
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 45 years old. Plaintiff was continuously employed with Bridgestone/Firestone since November, 1988. At the time of the injury, he held the position of "Set-Up Man" and was responsible for changing over the machines so that they could run different sizes of tires.
2. On 26 June 2008, plaintiff was standing at his supervisor's desk, talking through a wire chain-link fence with his hands grasping or holding on to the fence. While doing so, plaintiff was struck forcefully in the back by a heavy steel rack, which caused him to be pushed into the fence and pinned momentarily. After the cart rolled back away from him, plaintiff tried to hold on to the fence, but fell to the floor face first, apparently losing consciousness temporarily.
3. Following the accident, plaintiff was taken to the emergency room at Wilson Medical Center. During the examination at the hospital, plaintiff reported numbness and loss of feeling in his legs and/or feet, and excruciating pain in his back. He did not indicate any significant pain in his neck, although records indicate that he reported tenderness in the *Page 5 
paraspinal muscles in his upper back. Plaintiff was provided with Vicodin painkillers and discharged with instructions not to return to work until 30 June 2008.
4. On 1 July 2008, plaintiff presented to plant physician Dr. Wiley Cockrell with complaints of middle and low back pain when touched, and neck pain when he reached the very end of his range of motion. Plaintiff also complained of some abdominal pain that had resolved, ankle pain, and neck problems. The x-rays from the emergency room showed degenerative changes including some arthritis and bone spurs in plaintiff's neck. Plaintiff opined that he may have hit his head or that the rack may have hit his head, but he did not complain of headaches at the 1 July 2008 examination and his neurological exam was normal. Dr. Cockrell issued work restrictions of no production work on the plant floor which remained in place through 13 August 2008.
5. On 1 July 2008, plaintiff was directed to fill a "light duty position" which involved plaintiff reporting to work and sitting at a desk in an office. There were no specific duties assigned to this position, and plaintiff was permitted to sleep at the desk. Plaintiff was paid his regular salary for performing this light duty position.
6. The Full Commission finds that no evidence was presented that the light duty job offered by defendant was a real job available in the general work force and is not indicative of plaintiff's lack of disability during the time he was so employed.
7. Plaintiff continued to receive conservative treatment from Dr. Cockrell over the next several weeks. At times plaintiff's pain seemed to settle down, but then it would recur. Because of the continuing neck pain with radicular symptoms in plaintiff's upper extremities, Dr. Cockrell requested a cervical MRI which was performed on 17 July 2008. The MRI showed some degeneration and osteo-arthritis at several levels. Dr. Cockrell opined that plaintiff's *Page 6 
continuing pain was related to inflammation from the injury or his fairly marked cervical arthritis. Dr. Cockrell opined that any inflammation from the injury would resolve without intervention, while any arthritis might persist and necessitate additional evaluation and treatment.
8. Because of plaintiff's on-going complaints of lower back pain, Dr. Cockrell requested an MRI of the lumbar and thoracic spine, which was conducted on 12 August 2008. These tests also indicated disc degeneration at a number of levels in both the thoracic and lumbar regions of the spine, with some osteo-arthritis indicated at several levels of the lumbar spine. Because Dr. Cockrell was unable to determine a cause for plaintiff's ongoing pain, he intended to refer plaintiff to a spine specialist.
9. On or about 13 August 2008, Dr. Cockrell informed Jared Noah, defendant's Safety Coordinator, who runs the workers' compensation program at the plant, and who must approve any referrals, that he thought it was medically appropriate for plaintiff to see a spine specialist. However, Mr. Noah, who is not a medical doctor or a nurse, determined that Plaintiff was not being treated for an injury at work or issues related to an injury at work, and denied further medical treatment, including a referral to a spine specialist.
10. Mr. Noah also informed Plaintiff that he would no longer be permitted to fill the light duty position, and that he could only return to work if he was released to full duty. Accordingly, plaintiff was out of work beginning on 14 August 2008. While he was out of work, plaintiff was paid through a salary continuation plan comprised of sick leave or vacation pay which has been earned by the employee.
11. Plaintiff arranged to see Dr. Dwayne Patterson at the Raleigh Orthopaedic Clinic. He presented to Dr. Patterson on 21 August 2008, at which time Dr. Patterson observed tenderness in plaintiff's cervical, thoracic, and lumbar regions and the muscles of his back. Dr. Patterson *Page 7 
also reviewed plaintiff's MRI studies and confirmed that they showed disc bulging and degenerative changes in the cervical and lumbar areas. Dr. Patterson opined, "I do indeed think that his neck and back problems resulted from his injury as described above on 06/26/2008."
12. Dr. Patterson further opined that Plaintiff was not able to perform his regular job during the period from 14 August 2008 through 22 February 2009. As of 23 February 2009, plaintiff was able to return to work in a full duty capacity.
13. While plaintiff has continued to work his full duty job since 23 February 2009, he continues to experience some flare-ups of pain radiating into his shoulders, as well as pain in his lower back, particularly after working for eight hours. Plaintiff continued to receive treatment from Dr. Patterson following his return to full duty work, and Dr. Patterson has provided him with a number of epidural steroidal injections and has prescribed additional physical therapy. At the time of the hearing before the Deputy Commissioner, plaintiff was participating in physical therapy twice a week, as prescribed by Dr. Patterson.
14. Dr. Patterson opined that the degenerative disc problems and osteo-arthritis suffered by plaintiff would have developed over a period of years, and would not occur as the immediate result of trauma. He further opined that it was possible for someone to have plaintiff's degenerative and osteo-arthritis conditions, yet not experience any significant pain or problems. Dr. Patterson noted that he had seen other patients who had similar degenerative or arthritic changes to their spine who were not experiencing any symptoms, but who then began to experience on-going back problems and pain as a result of some trauma to their back.
15. Dr. Patterson opined that the mechanism of plaintiff's 26 June 2008 injury by accident was "certainly significant enough to cause an injury to his back and/or neck." He further opined that the blow plaintiff experienced when the T-shaped bar on the steel rack struck *Page 8 
him in his low to mid back was the type of event that would aggravate plaintiff's pre-existing back conditions. Furthermore, he noted during his deposition that his opinion that plaintiff's back and neck problems resulted from his injury of 26 June 2008 remained consistent.
16. The Full Commission finds as fact that plaintiff suffered a compensable injury by accident on 26 June 2008 which resulted in the aggravation of a pre-existing, non-disabling arthritic condition of plaintiff's back and neck, thereby causing it to become disabling.
17. The Full Commission finds as fact that plaintiff's disability resulting from the 26 June 2008 injury by accident continued until his return to work on 23 February 2009.
18. Plaintiff continues to require occasional treatment as provided by Dr. Patterson to effect a cure and lessen his period of disability when plaintiff experiences a flare up of his condition.
19. Plaintiff's average weekly wage was $1,204.21, entitling him to the maximum benefit for 2008 of $786.00 a week.
20. Defendant's denial of further medical treatment and further light duty work as of August 13, 2008 was not supported by a legal or factual basis and was therefore unreasonable and based on stubborn, unfounded litigiousness.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of the employment on 26 June 2008. N.C. Gen. Stat. § 97-2(6). *Page 9 
2. As a result of the compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $786.00 per week for the period from 14 August 2008 through 23 February 2009. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability, subject to the statute of limitations prescribed in N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. § 97-2(19).
4. Because defendant's defense of this claim was unreasonable and based on stubborn, unfounded litigiousness, plaintiff is entitled to an award of attorney's fees as a sanction based upon a percentage of the accrued disability compensation payable to plaintiff. N.C. Gen. Stat. § 97-88.1; Sparks v. Mountain BreezeRestaurant and Fish House, Inc.,55 N.C.App. 663, 286 S.E.2d 575 (1982). This attorney's fee shall not be deducted from the amounts due plaintiff, but instead shall be paid to counsel for plaintiff in addition to those amounts due plaintiff.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay temporary total disability compensation to plaintiff at the rate of $786.00 per week for the period from 14 August 2008 through 23 February 2009. As said compensation has accrued, it shall be paid in a lump sum.
2. Defendant shall pay medical expenses incurred or to be incurred when medical bills have been submitted according to established Industrial Commission procedures. *Page 10 
3. As a sanction for unreasonable defense, defendant shall pay plaintiff's attorney a reasonable attorney's fee at the rate of twenty-five percent (25%) of the compensation due, in addition to and not deducted from the compensation due plaintiff. That fee will be paid by paying an additional twenty-five percent (25%) of all accrued benefits as set forth in paragraph 1 above directly to plaintiff's attorney.
4. Defendant shall pay the costs.
This the 25th day of August, 2010.
 S/___________________
 LINDA CHEATHAM
 COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1